IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 07-cv-02118 - LTB - MEH

JEFFREY THORPE,

    Plaintiff,

v.

STEVEN BUSH,
TIMBERLAKE TRUCKING, INC.,
STEAMBOAT SNOWMOBILE TOURS, INC., and
JUSTIN B. WALSH,

    Defendants.

_____

ORDER
_____

This case is before me on Defendants Steamboat Snowmobile Tours, Inc. ("SST") and Justin B. Walsh's Motion for Summary Judgment [Doc # 31]. After consideration of the motion and all related pleadings, as well as the case file, I grant the motion as set forth below.

## I. Facts

The following facts are undisputed for purposes of Defendants' motion unless otherwise noted. Plaintiff is the surviving spouse of Carol Wayland. Ms. Wayland was killed after being struck by a tractor-trailer owned and driven by Defendant Steven Bush while she was attempting to cross U.S. Highway 40 on a snowmobile owned by SST. At the time of the accident, Ms. Wayland was participating in a group snowmobile tour led by Mr. Walsh, an employee of SST. As the tour group leader, Mr. Walsh crossed Highway 40 first and was to motion the group across when the roadway was clear. Other participants in the tour group provided statements that they did not see Mr. Walsh motion the group across the highway but Plaintiff, who was also

part of the tour group, claims that Mr. Walsh made ambiguous hand gestures just before the accident.

Prior to participating in the group snowmobile tour, Ms. Wayland signed an Assumption of Risk and Release of Claims (the "Release"). There is no evidence of any fraud or coercion in Ms. Wayland's execution of the Release. The Release provides in pertinent part as follows:

> I understand and recognize that the activities conducted or allowed by [SST], including, but not limited to snowmobiling ... may be hazardous. I understand that these activities, which I am about to voluntarily engage in, bear certain known risks and unanticipated risks, which could result in damage to my property and injury, illness, or death to myself. These risks include, but are not limited to, natural and manmade hazards, such as bare spots, variations in snow, ice and terrain, avalanches, snowstorms, and bumps, stumps, debris, rocks, fences, and fence posts, and all other natural and manmade hazards, which may exist in the area in which I am about to engage in winter recreation. I also realize that additional risks may include collisions, manufacturing defects, equipment failures, and the unavailability of immediate medical attention, in the case of injury or illness.
>
> Being aware that the recreational activities entail known and unknown risks, I expressly agree to accept and assume all responsibility and risk of damage to my property or injury, illness, or death to myself. My participation in this activity is purely voluntary, and I elect to participate in spite of the risks.
>
> I hereby voluntarily release and forever discharge [SST], and its ... employees ... and all other persons or entities, acting on their behalf (hereinafter, collectively referred to as "Steamboat Snowmobile"), of and from any liability, claims, or rights of action for any injury, illness, or death to myself or damage to my property, which will in any way arise out of my participation in the various recreational activities conducted or allowed by Steamboat Snowmobile, including, but not limited to, claims arising from the alleged negligent acts or omissions of Steamboat Snowmobile and its employees, and any claims based on breach of warranty, breach of contract, or strict liability.
>
> ... In signing this document, I fully recognize that I will have no right to make a claim or file a lawsuit against Steamboat Snowmobile even if any of those persons or entities collectively referred to herein as Steamboat Snowmobile negligently caused the bodily injury or property damage.
>
> ...

> My signature below indicates that I have read this entire document, understand it completely, understand that it affects my legal rights, and agree to be bound by its terms.

## II. Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

By the motion, Defendants argue that Plaintiff's claims for negligence against Mr. Walsh (Fourth Claim for Relief) and against SST under the doctrine of respondeat superior (Fifth Claim for Relief) are barred by the Release. I agree.

Under Colorado law, "[t]he determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine." *Jones v. Dressel,* 623 P.2d 370, 376 (Colo. 1981). In making this determination, I must consider "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intentions of the parties are expressed in clear and unambiguous language." *Id.* Further, since the Release seeks to insulate Defendants from their own negligence, it must be "closely scrutinized." *Id.*

Plaintiff does not argue that the second and third factors under *Jones* weigh against a finding that Plaintiff's negligence claims against SST and Mr. Walsh are barred by the Release. I will therefore limit my analysis to the first and fourth factors set forth in *Jones*.

4

In determining the existence of a duty to the public, the Colorado Supreme Court found that some or all of the following considerations must be present: (1) the involvement of a business generally thought suitable for public regulation; (2) the party seeking exculpation is performing a service of great importance or practical necessity to the public; (3) the party seeking exculpation holds itself out as willing to perform its services for any member of the public that seeks them; (4) the party seeking exculpation possesses a decisive advantage of bargaining strength against members of the public who seeks its services as a result of their essential nature; (5) the party seeking exculpation confronts the public with a standardized adhesion contract of exculpation; and (6) the person or property of the purchaser is placed under the control of the seller, subject to the risk or carelessness by the seller or its agents. *Id.* at 176-77 (*quoting Tunkl v. Regents of the Univ. of Calif.,* 383 P.2d 441, 444 (Cal. 1963)).

Clearly, the strictly recreational activity of snowmobiling does not satisfy the basic element of public necessity underlying these characteristics. Plaintiff argues, however, that the fact that Ms. Wayland's accident occurred while crossing a public highway gives rise to a public duty in what would ordinarily be a recreational activity. Plaintiff has not cited any supporting legal authority for this argument. Moreover, Plaintiff's argument is inconsistent with the Colorado Supreme Court's conclusion in *Jones* that the petitioner's contract with the respondent, a provider of recreational skydiving facilities including the use of an airplane to transport the skydivers to the jump site, did not affect the public interest notwithstanding the respondent's use of public airspace. *Id.* at 377. As in *Jones*, use of the public highway was incidental to SST's principal business of providing off-road recreational snowmobiling. I therefore conclude that the Release did not relate to any public necessity and that the first factor in *Jones* therefore supports enforcement of the

Release to bar Plaintiff's negligence claims against Defendants.

I next address whether the Release expresses the parties' intentions in clear and unambiguous language. In making this determination, I limit my analysis to the plain language of the Release. *Anderson v. Eby,* 998 F.2d 858, 862 (10th Cir. 1991). In particular, I look for legal jargon, length and complication, and the likelihood of confusion or failure of a party to recognize the full extent of the release provisions. *Chadwick v. Colt Ross Outfitters, Inc.,* 100 P.3d 465, 467 (Colo. 2004).

Here, the Release is relatively short, uncomplicated and free from legal jargon. By signing the Release, Ms. Wayland expressly acknowledged that she had no right to file a lawsuit against SST or Mr. Walsh even if these parties negligently caused injury to her and that "collisions" and death were among the numerous risks of snowmobiling. Plaintiff argues, however, that the Release is nonetheless ambiguous and void as a matter of law first because it is Plaintiff, not Ms. Wayland as the signatory on the Release, who is suing SST and Mr. Walsh for negligence under Colorado's Wrongful Death Act, C.R.S. § 13-21-201, *et seq*. The fact that Plaintiff is not a signatory on the release is irrelevant because Colorado courts have consistently recognized that the right to bring a wrongful death claim is dependent on the decedent's right to have brought a claim. *See e.g. Sigman v. Seafood Limited Partnership I,* 817 P.2d 527, 531 (Colo. 1991) ("Pursuant to Colorado's wrongful death statute, the plaintiffs can maintain an action only if [decedent] could have done so had his injuries not been fatal."). Thus, since the Release is clear and unambiguous that Ms. Wayland could not have sued SST or Mr. Walsh for negligence had she survived the accident, Plaintiff's negligence claims against Defendants under Colorado's Wrongful Death Act are barred as a matter of law.

Plaintiff also argues that the Release is ambiguous and void as a matter of law because its scope does not extend to the circumstances of this case, *ie.* a collision with a tractor-trailer on U.S. Highway 40. In support of this argument, Plaintiff points to the fact that the Release does not contain the words "highway," "crossing U.S. Highway 40," "tractor-trailer," or "vehicle." By omitting these words and phrases, Plaintiff argues that Defendants did not manifest an intent to include risks associated with on-road vehicles. I disagree. Even construing the Release against Defendants as I must, *Chadwick*, 100 P.3d at 470, I conclude that the Release clearly contemplates the risk of the tragic accident suffered by Ms. Wayland notwithstanding the omission of specific words and phrases relating to on-road vehicles or public roadways. *See Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, (Colo. 1989) (specific terms "negligence" and "breach of warranty" are not required for an exculpatory agreement to shield a party from claims based on these legal theories so long as the parties' intent to extinguish liability is clearly and unambiguously expressed). I therefore conclude that the Release clearly and unambiguously expressed the parties' to eliminate liability by Defendants' for accidents such as that suffered by Ms. Wayland and that the fourth factor in *Jones* therefore likewise supports enforcement of the Release to bar Plaintiff's negligence claims against Defendants.

After consideration of the *Jones* factors then, I conclude that the Release is valid and enforceable. Since Plaintiff has not alleged willful and wanton negligence, his negligence claims against Defendants are barred by the Release. *See Jones*, 623 P.2d at 376 (in no event will an exculpatory agreement shield a party from liability for willful and wanton negligence).

IT IS THEREFORE ORDERED that

1) Defendants' Motion for Summary Judgment [Doc # 31] is GRANTED;

2) Plaintiff's Fourth and Fifth Claims for Relief are DISMISSED WITH PREJUDICE; and

3) Defendants shall be awarded their costs.


Dated: February  19 , 2009 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE